UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
SHELDON BERGER

        Petitioner,

- against -

HON. ROBERT M. RACITI, et al.,

        Respondents.
--------------------------------------------------------X

**NOT FOR PUBLICATION**

MEMORANDUM & ORDER
05-CV-1001 (NGG)

GARAUFIS, United States District Judge.

Petitioner Sheldon Berger has moved pursuant to 28 U.S.C. § 2254 for a writ of habeas corpus vacating his conviction for Assault in the Third Degree (New York Public Law § 120.00), and in the alternative that his conviction be remanded to the state intermediary appellate court for consideration. Berger primarily asserts a Sixth Amendment ineffective assistance of appellate counsel claim, on the basis that his state appellate counsel failed to order a transcript for review of possible trial errors, and that one such error, namely the trial court's failure to instruct the jury on the justification in defense of property pursuant to New York Public Law § 35.25, would have prevailed on appeal. For the reasons set forth herein, Berger's Petition is denied.

**I.    Background**

    **A.    The Trial**

As the Petition alleges ineffective assistance of appellate counsel, this section shall summarize only the portions of the trial transcript and the appellate documents relevant to this claim and the Government's opposition.

In May 11, 2001, Slyvia Volpe, a painter and former girlfriend of the Petitioner's, was staying

as a guest in Berger's apartment while preparing her paintings for an exhibit. (Trial Transcript ("Tr."), at 18-22, 442.) At about 11:30 p.m., there appears to have been a dispute, possibly over the ownership of the paintings, at which point a physical altercation ensued that left Volpe severely bruised. (Id. at 24-26, 31-32.)

Shortly thereafter, the police arrested Berger and charged him with third degree assault, in addition to harassment, menacing, and petit larceny. (Id. at 446-52.) Berger represented himself *pro se* for seven months before the commencement of trial, during which time he requested and consented to numerous adjournments. (Affidavit of Michael Tarbutton, dated Aug. 25, 2005 ("Tarbutton Aff.") ¶ 19.) He moved for dismissal of the indictment pursuant to New York Public Law § 30.30(1)(b) ("P.L. § 30.30"), which requires the prosecution to be ready for trial within 90 days. (Id. ¶ 20.) This motion, and a subsequent motion to reargue with newly retained counsel were denied on the basis that the defense caused the delay. (Id. ¶ 21.)

At the subsequent trial, in which he was represented by Stephanie Zaro, the Prosecution's theory was that after Volpe threatened to leave his apartment that evening, that Berger grabbed her, punched her and kicked her, calling her a "whore" and a "bitch," and that after she left the apartment to file a police complaint, that Berger destroyed some of Volpe's paintings. (Tr., at 22-26.) Volpe testified that after she told Berger that she wanted to leave his apartment, he shook her and punched her in the face, and then once she fell to the floor, repeatedly kicked and punched her, causing severe bruises and lacerations, and permanent headaches and loss of hearing. (Id. at 109-17, 192-96.) She also testified that Berger lacerated her back. (Id. at 122.)

Berger testified in his own defense and admitted that he used force against Volpe, but explained that his use of force was justified. Specifically, he testified that he approached Volpe as

2

she was slashing the paintings with a knife, and used force against her only after she refused to relinquish the knife. (Id. at 31-32, 307-8.) Berger claimed that he entered the room Volpe was in that evening after he heard her screaming from another room:

> When I first came in, I was shocked. I heard her scream so my heart was racing. I see Sylvia [Volpe] with the knife slicing the painting. I told her to stop, what are you doing. She stopped and then turned around with the knife pointing it at me. I said, give me the knife, drop it.

Id. at 307. Berger testified that he and Volpe "struggled for a while," (id. at 309), and that "I was worried for my life. My life was in danger." (Id. at 311.) Berger testified that after a ten minute struggle he wrested the knife from her. (Id.)

The testimony of Berger's girlfriend, Lisa Wyatt, who was present at the altercation, corroborated this account:

> [Volpe] jumped on the kitchen table and started slashing the painting, screaming no one will have the paintings. I was shocked. Sheldon was laying down because he had a headache. I screamed and by the time [Berger] got into the kitchen, I think she had slashed two or three paintings like this. He tried to get the knife.

(Id. at 246.) Berger and Wyatt explained Volpe's injuries as having been caused in the struggle for the knife. (Id. at 247-48, 308-12.) Berger did not deny having told the police after the incident that he was stopping Volpe from damaging a painting, testifying only that he did not remember his statement. (Id. at 360.)

In discussing the jury charge, defense counsel asked for a charge of self-defense. (Id. at 378.) The government argued that no self-defense charge was warranted because Berger's testimony showed an attempt to protect the paintings rather than himself and Wyatt. In advancing this argument, the prosecutor stated:

> [Berger] said she was damaging the paintings. He demanded the knife and she waived at it

3

> him and I'm moving my wrist back and forth. He was not placed in fear. He was close to her. He went up to her and tried to get her to drop the knife as she was damaging the paintings. It was to protect the paintings not to protect himself.

(Id. at 379.) Another prosecutor elaborated that "It is our position that self-defense was not made out in the course of the defense case. The threat was not to him but to the painting and he is not entitle[d] in his own home to use any kind of force to -" (id. at 381), to which defense counsel responded:

> It is more than property. He says he sees her slashing with a weapon. She turned and now is waiving the knife at him and it is a foot away from him. Now, she says it is a dangerous instrument that is capable of inflicting death on him. He testified that he was afraid.

(Id. at 382.) The judge allowed the self-defense charge. (Id. at 387.)

Following the trial, Berger was found guilty of Assault in the Third Degree, and not guilty as to petit larceny, menacing, and harassment. (Id. at 460-61.) On August 12, 2002, Berger was sentenced to sixty days' incarceration followed by three years of probation.

B.   **Appellate History**

Berger was represented on appeal by Leonard I Ressler, Esq., who submitted an affidavit regarding his appellate representation of Berger that was filed in this court by the Government. In consultation with Berger's trial counsel, with whom Ressler shares an office and whom he assisted in Berger's trial, Ressler concluded that Berger's speedy trial rights under P.L. § 30.30 were violated because the trial court failed to conduct a "searching inquiry" regarding whether Berger had knowingly and voluntarily elected to proceed *pro se*, and because he was not cautioned by the trial court of the speedy trial consequences of his consenting to pretrial adjournments. (Affidavit of Leonard I. Ressler, dated November 29, 2005 ("Ressler Aff.") ¶¶ 5-8.) In order to prevent the

Appellate Term from "overlook[ing] the merits of th[is] claim [by] rais[ing] any claim of trial error . . . especially since most claims of trial error would involve credibility issues that were already resolved against Mr. Berger by the jury," (Id. ¶ 9) Ressler moved for the Appellate Term to permit him to proceed without the trial record. (Id. ¶¶ 2-3, 12-13.) In this motion, Ressler stated that:

> The Defendant-appellant requests permission to proceed without the trial record as he concedes said record does not contain appealable issues of law or fact. That Counsel is fully familiar with the facts and concurs that there are no issues contained within the trial record and joins in the request to proceed without the trial record for purposes of perfecting the appeal herein.

(Pet. Ex. B, at 4-5.) The Appellate Term granted Ressler's motion, finding that Berger showed good cause for proceeding without the record. (Affidavit of Michael Tarbutton, dated Aug. 26, 2005 ("Tarbutton Aff.") ¶43; see 22 N.Y.C.R.R. 731.1(b)(2).)

On December 12, 2003, the Appellate Term unanimously rejected the appeal, holding that the trial court was not required to conduct a "searching inquiry" regarding Berger's election to proceed *pro se* because Petitioner was adequately warned about the dangers of self-representation, and that all pretrial delays were chargeable to Petitioner. (Pet. Ex. G, at 2-6.)

Berger sought a writ of error *coram nobis*, on the ground that his appellate attorney did not read the trial transcript in preparing his appeal, and thereby overlooked the meritorious claim that the trial court erred in failing to instruct the jury on the defense of property justification, pursuant to New York Penal Law ("P.L.") § 35.25. Berger's *coram nobis* application was denied on September 30, 2004. The Appellate Term found that Petitioner's claim of ineffective assistance of appellate counsel was unavailing because Ressler argued "competently, though unsuccessfully" that the Petitioner's speedy trial rights were violated. (Pet. Ex. H., at 1.) Furthermore, the Appellate Term held that Petitioner's favored ground that the trial court should have instructed the jury on the

5

defense of property charge was unpreserved for appellate review because defense trial counsel "did not request this charge or make a timely objection." (Id. at 1.) While the Appellate Term noted that it can review an unpreserved claim in the interest of justice, "this court would not, under the instant circumstances, have been inclined to do so had defendant's appellate counsel raised such argument on appeal." (Id. at 2.)

Leave to appeal was denied on February 15, 2005.

## II. Discussion

In considering Berger's claims, this court must decide whether Petitioner's claim is procedurally barred because the Appellate Term's response to Petitioner's *coram nobis* petition was an adequate and independent state ground, and if not, whether appellate counsel's decision to assert the speedy trial claim without reviewing the record for trial error constitutes ineffective assistance of appellate counsel. I shall address the procedural issue first.

### A. Independent and Adequate State Grounds

"The adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law." Harris v. Reed, 489 U.S. 255, 260 (1989). Where a decision "fairly appear[s] to rest primarily on federal law, or to be interwoven with the federal law, and when the adequacy and independence of any possible state law ground is not clear from the face of the opinion," petitioners are presumed not to be barred by an independent and adequate state ground. Coleman v. Thompson, 501 U.S. 722, 729 (1991) (quoting Michigan v. Long, 463 U.S. 1032, 1040-41 (1983)). "A state procedural ground is not 'adequate' unless the procedural rule is 'strictly or regularly followed.'" Johnson v. Mississippi, 486 U.S. 578, 587 (1988) (citations omitted).

In rejecting Petitioner's *coram nobis* petition, the Appellate Term found that it would have been inclined to find the defense of property claim procedurally defaulted because trial counsel failed to request the instruction or to object to the trial court's failure to provide it. Petitioner urges that the Appellate Term's rejection of Petitioner's *coram nobis* petition does not constitute an adequate state ground because New York state courts generally reverse convictions where defense testimony raises a particular justification charge and the trial court fails to provide the correct charge, despite the lack of a request from defense counsel. (Pet.'s Mem. Supp. Pet., at 20-21.) While the Government does not directly address this point, it asserts that the Appellate Term procedurally barred Petitioner from asserting his claim because it invoked the preservation rule in finding that the trial counsel did not request or object to the lack of a defense of property justification, which is an adequate and independent state ground. (Gov't Mem. Opp. Pet., at 50-51.)

I find that the Appellate Term's decision does not procedurally bar Petitioner's habeas claim without reaching Petitioner's argument that the Appellate Term's procedural bar is not *adequate*, because I find that the Appellate Term's rejection of Petitioner's *coram nobis* petition rested on its ruling that appellate counsel was effective, and its colloquy regarding a possible procedural default does not constitute an *independent* basis.

The Supreme Court instructs that where the state appellate court does not "clearly and expressly" rely on a waiver as a ground to reject an ineffective assistance of counsel claim, a petitioner is "not barred from federal habeas." Coleman v. Thompson, 501 U.S. 722, 734 (1991); Michigan v. Long, 463 U.S. 1032, 1040-41 (1983); DeBerry v. Portuondo, 403 F.3d 57, 64 (2d Cir. 2005). Importantly, the Appellate Term did not expressly rule that it would have found that defense counsel waived Petitioner's failure to instruct claim, but rather stated that "this court would not . .

7

. have been *inclined*," to review this claim on the merits. (Pet. Ex. H, at 3 (emphasis supplied).) As the Appellate Term did not expressly rule that the Petitioner was procedurally barred from asserting his ineffective assistance claim, and it proceeded to review this claim on the merits, I find that its discussion regarding defense counsel's possible waiver was dicta and was not an independent and adequate state ground that would bar review of Petitioner's Sixth Amendment claims.

Having decided that Petitioner is not procedurally barred from habeas review, I shall proceed to discuss the merits of the Petition.

B. **Sixth Amendment Right to Effective Assistance of Appellate Counsel**

The Sixth Amendment right to a fair trial includes the right to "adequate legal assistance," which protects defendants from defense counsel conduct that "so undermine[s] the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland v. Wash., 466 U.S. 668, 686 (1984). For a court to find that defense counsel deprived a defendant of his or her Sixth Amendment right to effective assistance of counsel, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

As this is a petition pursuant to 28 U.S.C. § 2254, enacted as part of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), my consideration of this claim is circumscribed by the review limitations set forth in Section 2254:

> (d) an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the State court proceeding.

28 U.S.C. § 2254(d). As Petitioner argues that the Appellate Term's denial of relief violated Petitioner's right to effective assistance of appellate counsel, I must now determine whether the Appellate Term's rejection of Petition's claim was based on an "unreasonable determination of the facts" or was "an unreasonable application" of Supreme Court Sixth Amendment jurisprudence. Id. "In order for a federal court to find a state court's application of our precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" Wiggins v. Smith, 539 U.S. 510, 520 (2003).

### A. Reasonableness of Appellate Counsel's Appeal Strategy

Petitioner grounded his *coram nobis* application on whether it is *per se* ineffective assistance of appellate counsel to file an appeal "*without reading the trial transcript*." (Pet.'s Mem. Supp. Pet., at 1 (emphasis in original).) The Appellate Term, in rejecting Petitioner's claim, found that the claims that appellate counsel advanced did not require the full record, and that appellate counsel's claims were "competently" asserted. (Id. at 2.) This court accepts without discussion that these findings are a reasonable assessment of appellate counsel's presentation of the speedy trial claim. However, the Appellate Term did not reach the question presented by Petitioner of whether counsel was required, either *per se* or under the circumstances, to review the record before deciding which claim(s) to advance on appeal. I draw two conclusions from the court's nonresponsiveness to this claim: first, that the Appellate Term accepted Ressler's representation, made in his motion to

9

proceed without the record, that he found no appealable trial errors, and second, that this assessment was reasonable. I must therefore ascertain whether the Appellate Term's factual determination that Ressler found no appealable trial errors to be reasonable, and whether its finding that Ressler could reach this decision without reviewing the trial transcript was a reasonable application of clearly established law. In weighing these issues, I am mindful of the Supreme Court's instruction that a failure to investigate a claim "must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." Strickland, 466 U.S. at 691.

Petitioner relies on Wiggins for the proposition that appellate counsel has a duty to investigate claims before formulating a strategy as to which claim(s) to advance, and I find Wiggins to be instructive in reviewing Berger's claims. In Wiggins, the Supreme Court considered the Sixth Amendment rights of a petitioner whose trial counsel in a capital murder case did not investigate mitigating circumstances prior to postconviction proceedings. Wiggins, 539 U.S. at 517. Had counsel performed an investigation, he would have discovered substantial mitigating evidence, including a long history of petitioner's repeated sexual abuse by his natural and his successive foster parents and siblings. Id. At the postconviction proceeding, counsel presented a partial mitigation defense based on the state's presentence report, and the petitioner was sentenced to death. Id. at 516.

The Wiggins Court considered the reasonableness of counsel's representation by examining the quality of counsel's representation, the extent to which counsel's lack of investigation was an attempt to "winnow" out weaker claims and the extent to which it was the result of inattention, and prevailing professional norms. The Court first found that counsel did no investigation at all, relying instead on presentence reports prepared by the state for its mitigation defense, despite the fact that the report suggested that serious mitigating factors were present. Id. at 533. Counsel's explanation

10

that he felt that the defense's efforts were best spent arguing that petitioner was not directly responsible for the murder was belied by the facts that he did not focus exclusively on petitioner's culpability at the proceeding, and that he presented a partial mitigation defense. Id. at 526. The Court found that "[c]ounsel's conduct similarly fell short of the standards for capital defense work articulated by the American Bar Association . . . standards to which we long have referred as 'guides to determining what is reasonable.'" Id. at 524. Ultimately, the Court held that counsel's decision not to investigate petitioner's mitigation defense "did not reflect reasonable professional judgment," id. at 532, and prejudiced petitioner in that a reasonable mitigation defense might have resulted in a decision not to execute him. The Court vacated petitioner's death sentence and remanded the case for a new postconviction proceeding. Id. at 537-38.

Although the circumstances of Wiggins are substantially different from the case at bar, i.e. the Court considered *trial* counsel's effectiveness in the postconviction proceeding of a *capital* case, I find that the Wiggins Court controls how this court reviews Berger's habeas claim. Contrary to the Petitioner's position, the Wiggins Court does not articulate a *per se* rule regarding a counsel's investigation of a possible claim, but rather instructs that under Strickland the reasonableness of counsel's advocacy efforts should be determined on a case-by-case basis, ascertaining whether a particular advocacy decision is due to counsel's inattention or the result of an evaluation of possible strategies, deferring to counsel decisions that seek to "winnow" out weaker arguments, and mindful of professional standards in place at the time of the representation. Furthermore, Petitioner correctly asserts that Wiggins supports the proposition that a decision not to review the record *at all* is subject to considerable scrutiny. See Jones v. Barnes, 463 U.S. 745, 752 (1983) ("There can hardly be any question about the importance of having the appellate advocate examine the record with a view to

selecting the most promising issues for review.") Accordingly, in order to consider whether the Appellate Term's finding that appellate counsel's decision to forego investigation of possible trial errors was reasonable under Strickland, I shall first review *de novo* the efforts that appellate counsel made to assess that the speedy trial issue was Petitioner's strongest appeal claim.[1]

According to appellate counsel, his decision not to review the record was guided by three factors: first, he concluded that the speedy trial claim was dispositive and that it would result in vacatur of the conviction;[2] second, he participated in Berger's representation at trial with trial counsel and was unaware of any colorable trial errors for appeal; and third, as an appellate attorney, he assessed that if he appealed on the record, that the Appellate Term may have overlooked the speedy trial claim. (Ressler Aff. ¶¶ 3-9; Gov't's Mem. Opp. Pet., at 37-39, 44-46.) The Government, now in the curious position of defending the same speedy trial claim that it opposed in state court, adds that Ressler's successful application to litigate the appeal without the transcript "handicapped the prosecution," which could not then describe the seriousness of the attack. (Gov't's Mem. Opp. Pet., at 42.) Furthermore, appellate counsel's decision to proceed based on what seemed like a strong claim is supported by standard practice among appellate practitioners to avoid writing

---

[1] Where, as here, the state court assumed without inquiry or discussion that counsel performed a reasonable investigation of possible claims, a court sitting in habeas review should determine *de novo* the extent of counsel's investigation before conducting a Strickland reasonableness test. Wiggins, 539 U.S. at 531.

[2] As stated *supra*, the Appellate Term's rejection of Petitioner's *coram nobis* application determined that Petitioner's speedy trial claim presented a colorable appeal issue. To the extent that Petitioner asks this court to review this determination, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions . . . ." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); see also Bisnett v. Kelly, 221 F. Supp. 2d 373, 385 (E.D.N.Y. 2002) ("A state court's interpretation of state law is, of course, binding on federal habeas review.")

"[a] brief that raises every colorable issue [because it] runs the risk of burying good arguments . . . ." Jones, 463 U.S. at 753 (citing Davis, The Argument of an Appeal, 26 A.B.A.J. 895, 897 (1940); Godbold, Twenty Pages and Twenty Minutes - Effective Advocacy on Appeal, 30 Sw. L.J. 801 (1976)).

I further credit Ressler's statement that he "assisted [trial counsel] in preparing Mr. Berger for his testimony at trial," and his contemporaneous statement that he was "fully familiar with the facts and . . . [believed] that there are no issues contained within the trial record," (Ex. B, at 4) as showing that he was aware of Berger's trial testimony that he used force in self-defense, that trial counsel elected to pursue a self-defense charge and did not request a defense of property charge, and of the jury verdict, which necessarily found that Berger caused Volpe's serious injuries. Ressler's knowledge of these facts demonstrate his awareness that an appeal grounded in the trial court's failure to instruct the jury on the defense of property justification claim entailed serious risks.

The circumstances of Ressler's decision to proceed without the record therefore reveals a different scenario than the one described by Petitioner: Ressler did not order the record because he had sufficient information from attending the trial and participating in Berger's trial defense to conclude that no major trial errors occurred, and he concluded that proceeding without the record would secure the strategic advantages of focusing the Appellate Term on what he (and the Appellate Term) concluded was a meritorious claim. This strategy, Ressler hoped, would prevent the prosecution from muddying the speedy trial claim with details of the victim's injuries and the jury's credibility findings against Berger. These findings compel the conclusion that appellate counsel's decision not to review the record was not "outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690. In light of the above circumstances, I find that appellate

counsel's choice not to proceed on the record was not due to inattention, but rather the result of an evaluative process that took into account the trial proceedings that he attended and assisted in, his assessment of Petitioner's speedy trial claim, and his appellate advocacy experience that comports with standard practice. Unlike counsel in Wiggins, who had all the information he needed to know that further investigation into petitioner's mitigation defense was warranted, the facts make clear that Ressler formulated a reasonable opinion based upon substantial information available to him that proceeding without the record was strategically in Petitioner's best interests. Ressler's appellate strategy having resulted from a reasonable evaluation of Petitioner's appeal claims, his representation of Berger is properly afforded deference by the state appeals courts and by this court.

Accordingly, the Appellate Term's denial of Petitioner's *coram nobis* application on the basis that appellate counsel was effective was a reasonable application of Supreme Court precedent.

**B.     Prejudice**

Furthermore, Petitioner has not shown that had appellate counsel based Petitioner's appeal on the lack of a defense of property instruction that there would have been a reasonable likelihood that "the result of the proceeding would have been different.'" Id. (quoting Strickland, 466 U.S. at 694). First and foremost, Petitioner has failed to show a reasonable probability that the Appellate Term or the Court of Appeals would decide that the lack of a defense of property charge constitutes ineffective assistance of appellate counsel. While the Appellate Term's decision that it views this claim as waived by trial counsel does not procedurally bar Petitioner's claim, its further assessment that the claim is not sufficiently meritorious to review in the interests of justice is strong evidence that the Appellate Term would not have granted relief on the theory that Petitioner was entitled to a defense of property claim.

Furthermore, the Appellate Term's skepticism of Petitioner's defense of property claim accords with this court's evaluation of its likelihood of success on appeal, because the charge was reasonably waived by trial counsel. New York penal law describes the defense of property justification charge as follows:

> A person may use physical force, other than deadly physical force, upon another person and when and to the extent that he reasonably believes such to be necessary to prevent or terminate what he reasonably believes to be the commission or attempted commission by such other person of larceny or of criminal mischief with respect to property other than premises.

New York P.L. § 35.25. "Under New York law, in determining whether the evidence warrants a justification charge, the court must assess the record in the light most favorable to defendant." Davis v. Strack, 270 F.3d 111, 124-25 (2d Cir. 2001).

To be entitled to a defense of property charge, the Petitioner was therefore required to show (1) that Berger reasonably believed that the paintings were his property; (2) that the force that Berger employed was reasonably necessary to prevent or terminate Volpe's destruction of the paintings; and (3) that Berger terminated his use of force once the threat to his property ceased. Viewing the record in the light most favorable to Berger, trial counsel reasonably elected to pursue a self-defense theory because the trial testimony strongly suggests a self-defense motive, and a defense of property charge would have faced substantial obstacles. The trial testimony consisted of two versions of events: Volpe testified that Berger attacked her after she slapped him, and Berger testified that he injured Volpe because she had brandished a knife and that he was afraid for his and his girlfriend's, Wyatt's, life. Wyatt's testimony does not attribute a motive to Berger, but she corroborated Berger's testimony that he injured Volpe at a time in which she still represented a physical threat to him. Furthermore, when offered the opportunity on cross-examination to admit that he told police during

15

the investigation that his struggle with Volpe involved the destruction of the paintings, he testified that he did not remember making this statement. The wisdom of trial counsel's strategy to obtain a self-defense charge is further shown by the charge conference, in which the trial judge agreed with defense counsel and allowed a self-defense charge over the prosecution's objection. Lastly, in pursuing a defense of property charge, trial counsel would have had to established that (1) Berger reasonably believed that the paintings were his property, which presents the obvious hurtle that Berger was charged (though later acquitted) with stealing these paintings from Volpe; (2) that Berger's use of force was justifiable, which in light of the substantial injuries to Volpe seems less viable than trial counsel's theory that Berger feared for his life; and (3) that Berger ceased using force after the threat to the paintings ended, considering that his self-described struggle with her for the knife ended long after she stopped presenting a risk to the paintings. In light of the trial testimony, I find that Petitioner's defense of property justification is weak, and that there is not a reasonable likelihood that an appeals court would decide that Petitioner was entitled to this charge or that trial counsel was ineffective for not requesting this charge, as this defense was weaker than the self-defense charge obtained by trial counsel.

Moreover, this court is not required to decide whether it would have pursued a different trial strategy. It is not this court's role to decide which approach might have best assisted Berger's defense. "For judges to second-guess reasonable professional judgments and impose on . . . counsel a duty to raise every 'colorable' claim . . . would disserve the very goal of vigorous and effective advocacy that underlies Anders." Jones, 463 U.S. 754 (citing Anders v. California, 386 U.S. 738 (1967)). This court's review is therefore limited to answering whether trial counsel's representation was reasonable. While defense counsel might have developed a trial theory around a defense of

16

property justification, it was certainly reasonable for trial counsel to forego a defense of property charge as weaker than Berger's self-professed motive to protect his and Wyatt's life. Accordingly, it was reasonable for the Appellate Term to conclude that counsel was effective in strategically waiving a defense of property charge, and that her waiver of the charge was not in the interests of justice to review. As a result, I find no prejudice in appellate counsel's having proceeded without the record, as there is not a reasonable likelihood that Petitioner would have been granted relief had appellate counsel asserted this claim.[3]

Accordingly, I find that the Appellate Term's conclusions that appellate counsel's advocacy was effective and that it would not have granted relief based on the defense of property claim were based on a reasonable determination of the facts and a reasonable application of Supreme Court law. Petitioner's application for a writ of habeas corpus on the ground of ineffective assistance of appellate and trial counsel is therefore denied.

---

[3] As "petitioner cannot show that the court's justification charge was erroneous under state law, [he] thus cannot carry the heavier burden of establishing a violation of constitutional due process." Evans v. Artuz, 68 F. Supp. 478, 483-84 (S.D.N.Y. 1997).

**III.     Conclusion**

For the reasons set forth above, Berger's petition for a writ of habeas corpus is denied. The Appellate Term's denial of Petitioner's claims is a reasonable application of Supreme Court precedent. A certificate of appealability shall not issue. The Clerk of the Court is directed to close this case.

SO ORDERED.

Dated: April 28, 2006　　　　　　　　　　　　　_____/s/_____
　　　　Brooklyn, N.Y.　　　　　　　　　　　　Nicholas G. Garaufis
　　　　　　　　　　　　　　　　　　　　　　　United States District Judge